**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

|                         |   |                      |
|-------------------------|---|----------------------|
| STATE OF DELAWARE       | : | ID No. 2102000900    |
|                         | : |                      |
| v.                      | : |                      |
|                         | : |                      |
| MURRAY A. HALL,         | : |                      |
|                         | : |                      |
| Defendant.              | : |                      |

Submitted: August 30, 2023
Decided: November 2, 2023

**ORDER**

On this 2nd day of November 2023, upon consideration of Defendant Murray A. Hall's motion for postconviction relief, the Commissioner's Report and Recommendation, Mr. Hall's appeal, the exceptions he raises in his appeal, and the record in this case, it appears that:

1.      On November 4, 2021, Mr. Hall pled guilty to two counts of Robbery in the Second Degree, 11 *Del. C.* § 831, as lesser included offenses of Robbery in the First Degree, and one count of Possession of a Firearm During the Commission of a Felony, 11 *Del C.* § 1447A.   In Mr. Hall's plea agreement with the State, the parties jointly recommended that he serve an unsuspended five years of incarceration, followed by decreasing levels of probation.   After the Court conducted a full colloquy, it accepted the plea and sentenced Mr. Hall consistently with the joint recommendation.

2.      Mr. Hall filed no direct appeal after his guilty plea.   Rather, he filed a

motion, *pro se*, seeking postconviction relief pursuant to Superior Court Criminal Rule 61. The Court then referred the matter to a Superior Court commissioner for findings of fact and recommendations as permitted by 10 *Del*. *C*. § 512(b) and Superior Court Criminal Rule 62 (a)(5).

4. After considering the parties' positions, the Commissioner issued her findings and recommendations in her Report attached as Exhibit A. In her Report, she explained (1) why Mr. Hall failed to demonstrate that his counsel performed ineffectively before or during his guilty plea, and sentencing, and (2) why his remaining grounds for relief had no merit. The Commissioner conducted a complete review of the record and found that Mr. Hall's counsel provided competent representation and that he entered his plea knowingly, intelligently, and voluntarily. Accordingly, she recommended that the Court deny Mr. Hall's motion for postconviction relief.

5. Mr. Hall then appealed the Commissioner's Report, and later supplemented his exceptions with an "amended appeal." When considering Mr. Hall's exceptions to the Report, the Court conducts a *de novo* review to determine whether the Commissioner erred in those portions of her Report to which he objects.[1] In Mr. Hall's combined submissions, he merely reiterates the arguments that he presented to the Commissioner.

6. After thoroughly considering Mr. Hall's exceptions to the Report and after reviewing the record *de novo,* the Court finds that the Commissioner has already correctly addressed his exceptions. She committed no error, and as a result, the Court adopts her Report.

**NOW, THEREFORE**, after a *de novo* review of the record in this matter,

---

[1] Del. Super. Ct. Crim. R. 62(a)(5)(iv).

and for the reasons stated in the Commissioner's Report and Recommendation dated July 27, 2023:

**IT IS HEREBY ORDERED** that the Court adopts the Commissioner's Report and Recommendation attached as Exhibit A.   Mr. Hall's motion for postconviction relief filed pursuant to Superior Court Criminal Rule 61 is therefore **DENIED**.

/s/Jeffrey J Clark
Resident Judge

JJC/klc
oc:    Prothonotary
cc:    The Honorable Andrea M. Freud
       Murray Hall, Pro Se
       Trial Counsel

# Exhibit A

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | : | |
| | : | ID No. 2102000900 |
| | : | In and for Kent County |
| v. | : | |
| | : | RK-21020160-01 ROBBERY 2ND |
| MURRAY A. HALL, | : | RK-21020161-01 ROBBERY 2ND |
| | : | RK-21020162-01 PFDCF |
| Defendant. | : | |

**COMMISSIONER'S REPORT AND RECOMMENDATION**

**Upon Defendant's Motion for Postconviction Relief
Pursuant to Superior Court Criminal Rule 61**

Stephen Welch, Deputy Attorney General, Department of Justice, for the State of Delaware.

Murray Hall, *Pro se*.

FREUD, Commissioner
July 27, 2023

The defendant, Murray Hall ("Hall"), pled guilty on November 4, 2021, to two counts of Robbery in the Second Degree 11 *Del. C*. § 831, as lesser included offenses of Robbery in the First Degree; and one count of Possession of a Firearm During the Commission of a Felony, 11 *Del. C.* §1447A; As part of the plea deal, the State agreed to *Nolle Prosequis* on the remaining charges of one count of Aggravated Menacing, two counts of Wearing a Disguise During the Commission of a Crime, and one count of Conspiracy in the Second Degree. The State, along with the Defense, recommended a sentence thirteen years incarceration, suspended after serving five years, three of which were minimum mandatory, followed by varying levels of probation. Had Hall gone to trial and been found guilty as charged, he faced many years in jail, including many years of a minimum mandatory sentence.

The Court agreed with the sentence recommendation of the parties and sentenced Hall in accordance with the plea agreement recommendation.

Hall did not appeal his conviction to the Delaware Supreme Court. Instead he filed the pending Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 on July 20, 2022, in which he alleges, among other claims, ineffective assistance of counsel. Following several continuances and a request by the Court to trial counsel to supplement her response, the matter is now ready for my review.

## FACTS

According to the Affidavit of Probable Cause, on September 25, 2020, Dover Police responded to Royal Farms convenience store at approximately 2248 hours, located at 293 Saulsbury Road, Dover for a robbery incident. The witness described the suspect as a black male, with a light-colored facemask with a venting device on the front, waiting in line behind other customers. When it was the suspect's turn in line, he approached the counter and demanded money from the cash register and presented a black handgun, which the suspect pulled from his waistband area. The Royal Farms clerk complied with the demand, as she was afraid of being shot. The clerk handed over approximately $132.00. After a review of the Royal Farms' surveillance footage, the suspect could be seen fleeing the store on foot, eastbound towards the Simon Circle development.

On January 25, 2021, Dover Police responded to the same Royal Farms convenience store at approximately 2328 hours for a report of another robbery incident. A Royal Farms employee stated that a black male wearing a gray Nike zip up hoodie with the hood over his head, blue faded jeans, and white sneakers with red accents and a multi-colored facemask entered the convenience store and stood in line. When the suspect approached the counter, when it was his turn in line, he

6

asked for 2 packs of Newport 100s cigarettes. When then the employee placed the cigarettes on the counter, the suspected demanded all of the money from the cash register. The suspect said, "don't make a scene" and said, "I'm not play." The Royal Farms employee said that the suspect kept his hands in the pocket of his hoodie and observed a large bulge in the same pocket. The Royal Farms employee believed the suspect was armed with a weapon. The employee placed the money into a bag and handed it to the suspect, which was approximately $130.00. The suspect kept his right hand in his hoodie pocket and took the bag of money with his left hand.

A review of the Royal Farms' video surveillance footage revealed the suspect walked to the Royal Farms' parking lot from the area of Simon Circle development. After the robbery, the suspect fled on foot, eastbound towards Simon Circle development.

A review of the Simon Circle video surveillance footage from January 25, 2021, revealed what appears to be a light-colored Jeep Renegade occupied by at least (2) people driving around the development just prior to the Royal Farms robbery. The vehicle parked in Simon Circle development, the driver of the vehicle exited, and walked towards Royal Farms. Just after the robbery, what appears to be the same subject, walked eastbound from the area of Royal Farms and entered the driver's seat of the vehicle. The vehicle made a U-turn in the roadway and fled eastbound. There were certain unique features of the vehicle, such as dark colored roof rails, dark colored roof, the mirrors and door handles appeared to be the same color as the main body of the vehicle, a dark colored front grill, and the lower half of the front bumper is dark in color.

On January 20, 2021, a stolen tan 2016 Jeep Renegade, registered to Murray Hall, was recovered and returned to Hall. Photographs of Hall's Jeep Renegade, which matched the suspect vehicle observed in the January 25, 2021, Simon Circle

7

video surveillance footage.

After reviewing the Royal Farms video footage from the September 25, 2020, and January 25, 2021, robberies, the suspect in both incidents is a black male with similar skin tone and similar build. During both incidents, the suspect waited in line behind other customers, which is unique about both of these incidents. The suspect fled on foot towards Simon Circle development after both robbery incidents. One robbery occurred at approximately 2248 hours and the other occurred at approximately 2328 hours, which both robberies occurred within close proximity of each other regarding time of day.

Through investigation, it was discovered that Hall sold items to Capital Pawn located at 324 Martin Street, Dover, Delaware on January 25, 2021, at approximately 1734 hours. On February 9, 2021, the Dover Police obtained video surveillance from Capital Pawn from January 25, 2021, incident. Hall was observed arriving at Capital Pawn in what appears to be his tan Jeep Renegade. Hall was wearing what appeared to be the same gray Nike zip up hoodie, blue faded jeans, and multi-colored facemask as in the January 25, 2021, Royal Farms robbery in Dover, DE. The tan Jeep Renegade observed in the Capital Pawn video footage matches the suspect vehicle observed in the Simon Circle video footage from January 25, 2021, Royal Farms robbery incident.

## HALL'S CONTENTIONS

In Hall's Amended Motion for Postconviction Relief, he raises the following ground for relief:

| **Ground One** | **Mentally Incompetent**.<br>During the time upon taking the plea Murray Hall was on 30 mg of Zyprexa for |

8

schizophrenia. That powerful dose alone is enough to distort and impair judgment.

| | |
|---|---|
| **Ground Two** | **Lack of Physiological Evaluation** |

Despite the Courts knowledge of prior and present mental history, the Court failed to order a physiological evaluation to determine if I was mentally able to take plea.

| | |
|---|---|
| **Ground Three** | **Ineffective Assistance of Counsel.** |

The lawyer never raised anything about my mental health, or about the fact that their was proff (sp.) I was at work during the robbies(sp.) I was not defended.

| | |
|---|---|
| **Ground Four** | **Suppression of Favorable Evidence** |

The witness stated that she knows the person who rob her stated his name and the description given is far from mines. Also I'm charged with "PFDCF" when I was never found in possesion (sp.) of a firearm and they can't say nor prove that is was an actually firearm

## DISCUSSION

Under Delaware Law, the Court must first determine whether Hall has met the procedural requirements of the Superior Court Criminal Rule 61(i) before it may consider the merits of the postconviction relief claims.[2]    Under Rule 61, postconviction claims for relief must be brought within one year of the conviction becoming final.[3]   Hall's Motion was filed in a timely fashion, thus the bar of Rule

---

[2] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991)
[3] Super. Ct. Crim. R. 61(i)(1).

61(i)(1) does not apply to this Motion. As this is Hall's initial Motion for Postconviction Relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

None of Hall's claims were raised previously at his plea, sentencing, or on direct appeal. Consequently, they are barred under Superior Court Criminal Rule 61(i)(3) unless he demonstrates: (1) cause for relief from the procedural default; and (2) prejudice from a violation of the movant's rights.[4] The bars to relief are inapplicable to a jurisdictional challenge or to a claim that satisfies the pleading requirements of subparagraph (2)(i) or (2)(ii) of subdivision (d) of Rule 61.[5] To meet the requirements of Rule 61(d)(2), a defendant must plead with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted[6] or that he pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States or Delaware Supreme Courts, applies to the defendant's case rendering the conviction invalid.[7] Hall's Motion pleads neither requirement of Rule 61(d)(2).

Each of Hall's ground for relief is premised on ineffective assistance of counsel. Therefore, Hall has alleged sufficient cause for not having asserted this ground for relief at trial and on direct appeal. Hall's ineffective assistance of counsel's claim is not subject to the procedural default rule in part because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal. For this reason, many defendants, including Hall, allege ineffective assistance of counsel in order to overcome the procedural default. "However, this

---

[4] Super. Ct. Crim. R. 61(i)(3).
[5] Super. Ct. Crim. R. 61(i)(5).
[6] Super. Ct. Crim. R. 61(d)(2)(i).
[7] Super. Ct. Crim. R. 61(d)(2)(ii).

path creates confusion if the defendant does not understand that the test for ineffective assistance of counsel and the test for cause and prejudice are distinct, albeit similar, standards."[8]  The United States Supreme Court has held that:

> [i]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance;' [i]neffective assistance of counsel then is cause for a procedural default.[9]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark.  Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two-part analysis enunciated in *Strickland v. Washington*[10] and adopted by the Delaware Supreme Court in *Albury v. State*.[11]

In the context of a guilty plea challenge, *Strickland* requires a defendant show: (1) that counsel's representation fell below an objective standard or reasonableness; and (2) that counsel's actions were prejudicial to him in that there is a reasonable probability that, but for counsel's error, he would not have pled guilty and would have insisted on going to trial and that the result of the trial would have been his acquittal.[12] The failure to establish that they defendant would not have pled guilty and would have proceeded to trial is sufficient cause for denial of relief.[13]  In addition, Delaware Courts have consistently held that in setting forth a claim of

---

[8] *State v. Gattis*, 1995 WL 790961 (Del. Super.)

[9] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[10] 466 U.S. 668 (1984).

[11] 551 A.2d 53, 58 (Del. 1988).

[12] *Strickland,* 466 U.S. at 687

[13] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1988) (Citing *Albury v. State,* 551 A.2d 53, 60 (Del. 1988)) (citations omitted).

ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them of risk summary dismissal.[14] When examining the representation of counsel pursuant to the first prong of the *Strickland* test, there is a strong presumption that counsel's conduct was professionally reasonable.[15] This standard is highly demanding.[16] *Strickland* mandates that, when viewing counsel's representation, this Court must endeavor to "eliminate the distorting effects of hindsight."[17]

Following a complete review of the record in this matter, it is clear that Hall has failed to allege any facts sufficient to substantiate his claims that his attorney was ineffective. I find Trial Counsel's affidavits, in conjunction with the record, more credible than Hall's self-serving claims that his counsel's representation was ineffective. Hall's counsel denies the allegations.

Hall was facing the possibility of many years in jail, including minimum mandatory time, had he been convicted on all counts. The sentence and plea were very reasonable under all the circumstances, especially in light of the evidence against him. Prior to the entry of the plea, Hall and his attorney discussed the case ad the plea. The plea bargain was clearly advantageous to Hall. Counsel was successful in negotiating a beneficial plea bargain with the State. Counsel's representation was certainly well within the rage of required by *Strickland*. Additionally, when Hall entered his plea, he stated he was satisfied with Defense Counsel's performance. He is bound by his statements unless he presents clear and

---

[14] *See e.g., Outten v. State*, 720 A.2d 547, 557 (Del. 1998), citing *Boughner v. State*, 1995 WL 466465 at *1 (Del. Supr.).

[15] *Albury,* 551 A.2d at 59 *(Citing Strickland,* 466 U.S. at 689).

[16] *Flamer v. State*, 585 A.2d 736, 754 (Del. 1990) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986)).

[17] *Strickland*, 466 U.S. at 689.

convincing evidence to the contrary.[18] Consequently, Hall has failed to establish that his counsel's representation was ineffective under the *Strickland* test.

Even assuming, *arguendo*, that counsel's representation of Hall was somehow deficient, Hall must satisfy the second prong of the *Strickland* test, prejudice. In an attempt to show prejudice, Hall simply asserts that his counsel was ineffective by failing to adequately investigate the case and for allegedly allowing him to plead guilty when he was mentally incompetent. Hall's Trial Counsel states that Hall was competent to plead guilty and that she was prepared for trial. My review of the facts of the case leads me to conclude that Trial Counsel's representation of Hall was well within the requirements of the Sixth Amendment and no prejudice has been demonstrated. His statements are insufficient to establish prejudice, particularly in light of the evidence against him. Therefore, I find Hall's grounds for relief are meritless.

I will briefly address Hall's allegations for the benefit of the Court. Hall first claims that due to his documented mental illness and the fact that he was taking a prescribed mental health medication at the time of his plea, it was consequently unkowing and involuntary. The record, however, belies Hall's assertions. Both Counsel and the Court determined Hall was competent to plead guilty on the day he did. The fact that he was taking his prescribed medications bolsters the evidence that he was competent since the mediation is designed to counteract the effects of a mental illness. Hall's claim is unsupported and meritless.

Hall's remaning claim revolves around his allegations that he could not have committed the robberies because he was working at the time of the robberies. He claims his attorney was ineffective for not delving into his alleged alibi. Trial

---

[18] *Mapp v. State*, 1994 WL 91264, at *2 (Del. Supr.) (Citing *Sullivan v. State*, 636 A.2d 931, 937-938 (Del. 1994)).

Counsel provided the Court with a copy of a subpoena issued by the Court to Hall's alleged employer. Clearly, Trial Counsel took steps to investigate Hall's alleged alibi. While Trial Counsel has no record that the alleged employer ever responded to the subpoena, that fact does not prove ineffective assistance on her part. Prior to Hall's trial he called Trial Counsel and indicated he wished to accept the State's plea offer. By this action and his plea, he admitted his guilt and waived any futher duty on the part of his Counsel to delve further into his alleged alibi. Had Hall not on his own, decided to plead guilty, presumably Trial Counsel would have followed up on the subpoena. However, since Hall chose to plead guilty there was no longer any need to follow up with that investigation since Hall admitted his guilt. Consequently, this ground for relief is meritless, as well.

To the extent that Hall alleges his plea was involuntary, the record contradicts such an allegation. When addressing the question of whether a plea was constitutionally knowing and voluntary, the Court looks to a plea colloquy to determine if the waiver of constitutional rights was knowing and voluntary. [19] At the guilty-plea hearing, the Court asked Hall whether he understood the nature of the charges. The consequences of his pleading, and whether he was voluntarily entering the pleas. The Court asked Hall if he understood he would waive his constitutional rights if he entered the plea including the right to suppress evidence; if he understood each of the constitutional rights listed on the Truth-in-Sentencing Guilty Plea Form ("Guilty Plea Form"); and whether he gave truthful answers to all the questions on the form. The Court asked Hall if he had discussed his plea and its consequences fully with his attorney. The Court also asked Hall if he was satisfied with this counsel's representation. Hall answered each of these questions affirmatively.[20] I

---

[19] *Godinez v. Moran*, 509 U.S. 389, 400 (1993)

[20] *State v. Hall*, Del. Super., I.D. No.2102000900 (Nov. 4, 2021) Tr. at 6-13

14

find Trial Counsel's representation far more credible than Hall's self-serving, vague allegations.

Furthermore, prior to entering his plea, Hall signed a Guilty Plea Form and Plea Agreement in his own handwriting. Hall's signature on the forms indicated that he understood the constitutional rights he was relinquishing by pleading guilty and that he freely and voluntarily decided to plead guilty to the charges listed in the Plea Agreement. Hall is bound by the statements he made on the signed Guilty Plea Form, unless he proves otherwise by clear and convincing evidence. [21] I confidently find that Hall entered his plea knowingly and voluntarily and that Hall's grounds for relief are completely meritless.

## CONCLUSION

I find that Hall's counsel represented him in a competent and effective manner, as required by the standards set in *Strickland* and that Hall has failed to demonstrate any prejudice stemming from the representation. I also find that Hall's guilty plea was entered knowingly and voluntarily. I recommend that the Court deny Hall's Motion for Postconviction Relief, as procedurally barred and meritless.

/s/Andrea M. Freud
Commissioner

AMF/jan
oc:    Prothonotary
cc:    Resident Judge Jeffrey J Clark
       Stephen Welch, DAG
       J'Aime Walker, Esq.
       Murray Hall, SCI

---

[21] *Sommerville v. State*, 703 A.2d 629, 632 (Del. 1997)

15